UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Sunnyside Timber LLC, et al            Civil Action No. 09-01458

versus            Judge Richard T. Haik, Sr.

Barnes, et al            Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is defendants, W. Frank Barnes, W.F. Barnes Corporation, and Brenda Barnes', Motion for Judgment on the Pleadings on the Basis of Prescription and/or Statute of Limitations [Rec. Doc. 206], filed on October 28, 2013, plaintiffs, Sunnyside Land, LLC and Sunnyside Timber, LLC's, Memorandum in Opposition filed on October 30, 2013 [Rec. Doc. 209] and defendants' Reply thereto filed on November 7, 2013. [Rec. Doc. 225]. On November 8, 2013, the Court conducted a telephone conference with the parties and ordered defendants to "submit additional briefing on the motion within 21 days of the date of this order including, but not limited to, abandonment of the Utah State Court case and the law which this Court should apply, as well as the effect of the Bankruptcy actions related to this action." *R. 226.* Defendants submitted supplemental briefing on the Motion on December 2, 2013, [Rec. Doc. 235], and plaintiffs filed a Response in Opposition on December 6, 2013, [Rec. Doc. 236]. For the reasons that follow, defendants' Motion will be granted.

## *BACKGROUND*

On June 3, 1997, Barnes Corporation and plaintiffs entered into a contract (the

"Contract") to purchase 23,000 acres of land in Carbon County, Utah (the "Utah Property"). *R. 90, ¶ 9.* Plaintiffs allege that during negotiations, Frank Barnes represented to them that Range Creek Road was a public road. *Id., ¶ 14.* On or about November 26, 1997, plaintiffs and Barnes Corporation executed an Amendment of Contract for Purchase of Real Estate ("Amendment"). *R. 206, Exh. 2; R. 90, ¶ 11.* At the time the sale of the property was closed, in December 1997, Barnes Corporation delivered Warranty Deeds for the land and timber estates to the Plaintiffs, respectively. *R. 90, ¶16.* Plaintiffs took possession of the Utah Property and began harvesting timber on the Utah Property. *Id., ¶¶ 18-19.*

Plaintiffs allege that after they began timbering operations, a neighboring land owner, Keith Allred, would not allow the Plaintiffs' loggers to pass a portion of Range Creek Road that traversed Mr. Allred's property, claiming that the road was privately owned by him where it crossed his property. *Id., ¶ 19.* Plaintiffs further allege that as a result of the lack of access defendants committed fraud and breached a warranty included in the 1997 Warranty Deed concerning access to the Utah Property.

Plaintiffs filed suit against Barnes and Barnes Corporation in the 3rd District Court in and for Salt Lake County, State of Utah, in 1998 (the "Utah Case"), for the same claims set forth in this action. The certified docket sheet of the Utah Case ("Docket Sheet") and the pleadings indicate that the action was filed on March 31, 1999. *R. 90, ¶27; R. 206, Exh. 3; R. 235, Exh. A.* On June 20, 2000, Involuntary Chapter 11 Bankruptcy Petitions were filed against plaintiffs in the Bankruptcy Court for the Western District of Louisiana. *R. 90, ¶¶ 26-*

*27; R. 206, Exh. 4, 5.*

The Docket Sheet reflects that on June 23, 2000, a "Notice of Bankruptcy Filing (Sunnyside Timber LLC and Sunnyside Land LLC)" was filed with the Court. *R. 235-1, Exh. A, p. 11.* A few weeks later, on July 18, 2000, the Docket Sheet reflects a minute entry stating:

> The Court has received a notice of Bankruptcy filing by plaintiffs Sunnyside Timber, L.L.C. and Sunnyside Land L.L.C. Accordingly, the Court will take no further action in this case until such time as it is otherwise appropriate to proceed forward under the Bankruptcy Code.

*R. 235, Exh A, pp. 11-12.* After the Minute Entry was entered, on August 14, 2000, the Utah Court issued a Notice for hearing on a Summary Judgment Motion and proceeded in the case. The Docket Sheet reflects subsequent proceedings. *R. 235-1.*

Citing *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989), defendants explain that because Section 362 of the Bankruptcy Code imposes an Automatic Stay that only applies to suits "against the Debtor," 11 U.S.C. § 362(a)(1), and to acts to obtain possession of or exercise control over "property of the estate," § 362(a)(3), neither of which applied to plaintiff's Bankruptcy Case, the July 18, 2000 order staying the Utah Case was erroneous and was therefore negated.

On November 15, 2000, plaintiffs removed the Utah Case to the Federal District Court for the District of Utah. *R. 206, Exh. 6.* Plaintiffs later filed a Motion to Remand the Utah Case despite their previous removal. *Id., Exh. 7.* Barnes and Barnes Corporation opposed the Motion to Remand and moved to change the venue to the Western District of Louisiana,

a motion which plaintiffs opposed. *Id., Exh. 8, 9*. The Federal District Court for the District of Utah denied Barnes' and Barnes Corporations' Motion to Change the Venue to the Western District of Louisiana and granted plaintiffs' Motion to Remand. *Id., Exh. 10*. Thereafter, the Chapter 7 Trustees for the estates of plaintiffs continued to pursue the Utah Case in the 3rd District Court in Salt Lake County, Utah until 2007. *See R. 235-1*.

On May 14, 2007, the Chapter 7 Trustees filed an Application to Abandon the claims being pursued in the Utah Case. *R. 206, Exh. 11*. On July 16, 2007, the Bankruptcy Court granted the Trustees' Motion to Abandon and Ordered that the Utah Case was "of inconsequential value to the estates and is abandoned." *R. 235-2*. Because the Chapter 7 trustees abandoned interest in the estate's cause of action and the right to prosecute, the cause of action reverted back to the debtor, giving plaintiffs the right to prosecute the Utah Case on their own behalf. *See, Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir.1990) ("Following abandonment, whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right."). On April 13, 2007, plaintiffs' attorneys filed a Notice of Withdraw from the Utah Case and the cost bond previously posted by plaintiffs was returned to them. *R. 206, Exh. 12; R. 235-1*. In 2011, the entire file for the Utah Case was destroyed. *R. 235-1, p. 18 ("04-06-11 Note: Retention met file destroyed")*.

Several creditors filed proof of claims in plaintiffs' bankruptcies, including Sue and D. Creig Brignac and Washington State Bancshares, Inc. (the "Brignac Creditors"), who filed unsecured claims, and Barnes Corporation, who filed secured claims, based on the loans

4

made to plaintiffs for the purchase of the land, as well as unsecured claims. *R. 235-3*.[1] On October 22, 2004, the Brignac Creditors moved to subordinate the claims of Barnes[2] and Barnes Corporation pursuant to §510 of the Bankruptcy Code.[3] *R. 235-5*. On November 15, 2004, the Brignac Creditors filed adversary proceedings to subordinate or dismiss the claims.[4] *R. 235-6*. At the time the Brignac Creditors filed the adversary proceedings to subordinate claims in 2004, plaintiffs were not named as party-plaintiffs in the proceedings.

On February 13, 2008, a Second Amended Complaint was filed in the Brignac Creditors' subordination adversary proceedings to add Sunnyside Land and Sunnyside Timber as party-plaintiffs to the subordination proceedings. *R. 206, Exh.15*. One year later, on February 13, 2009, plaintiffs filed a Motion to Sever their claims from the subordination claim of the Brignac Creditors. *R. 235, Exh. F*. In their Motion to Sever, plaintiffs stated that their addition as plaintiffs to the Brignac Creditors' Adversary Proceedings was merely a "reassertion" of their claims from the Utah Case:

> On July 16, 2007, this Court issued an Order approving the Trustees' abandonment of the claims of Sunnyside Land, LLC and Sunnyside Timber, LLC against W. Frank Barnes, W.F. Barnes Corporation and Cascade

---

[1] Defendants represent that because copies of the Proof of Claims filed by D. Creig Brignac and Washington State Bancshares in the Sunnyside Land Bankruptcy Proceeding were not available online, they attached the Claims Registers reflecting that these claims were filed.

[2] The record indicates that Frank Barnes did not file a proof of claim in the bankruptcies.

[3] Section 510 of the Bankruptcy Code permits the bankruptcy court to equitably subordinate one creditor's claim so that other creditors get paid before the subordinated creditor when the debtor's assets are distributed to creditors. *See* 11 U.S.C. § 510 (equitable subordination).

[4] An adversary proceeding is essentially a lawsuit filed with the bankruptcy court because, pursuant to certain criteria, it is sufficiently related to a bankruptcy proceeding to warrant the bankruptcy court's jurisdiction over it. *See, e.g., Bankruptcy Rule 7001*.

> Mountain Resources which had previously been asserted in a state court action then pending in the state of Utah...
> By the Second Amended and Restated Complaint filed in this matter on February 13, 2008, the Sunnyside Land and Timber, LLCs **reasserted their claims against W. Frank Barnes, W.F. Barnes Corporation**...

*Id.* (emphasis added.) On March 3, 2009, plaintiffs' state law claims against defendants were severed from the subordination claim of the Brignac Creditors and assigned two new adversary proceeding case numbers. *R. 206, Exh. 16.*

On August 6, 2009, plaintiffs filed a Motion for Withdrawal of Reference [or] Alternatively Transfer plaintiffs' severed case (now the present lawsuit), seeking to transfer their claims to this Court. *R. 206, Exh. 17.* In the Memorandum in Support of their Motion, plaintiffs asserted, "The Plaintiffs' state law claims in the Adversary Proceedings [are] a non-core proceeding as defined in 28 U.S.C. 157 in that [they] **do not relate** to the administration of the estates of the Sunnyside debtors..." and did "not seek to have certain rights of the parties adjudicated in such a manner that will directly affect the property of the debtors' estates and the creditor/debtor relationship." *Id.* at pgs. 2-3 (emphasis added). Hence, plaintiffs admitted that the state causes of action against defendants which they added to the Brignac Creditors' Adversary Proceedings in 2008 did not relate to that core subordination proceeding and therefore did not belong in the bankruptcy court at all.

Moreover, the addition of the Sunnyside entities as party-plaintiffs to the Brignac Creditors adversary proceedings could have no effect because after the Trustees abandoned the claims in the Utah Case to plaintiffs the bankruptcy court lost subject matter jurisdiction

over plaintiffs' claims against Barnes. *See,* 4 Norton Bankr. L. & Prac. 3d § 74:2 (2014) (Abandoned property "becomes part of the debtor's non-bankruptcy estate, just as if no bankruptcy had occurred."); *In re Mitchell,* 2006 WL 2403886, 1 (Bkrtcy.E.D.La.,2006)(Property, once disclaimed and abandoned, is no longer property of the estate, nor is it subject to the jurisdiction of the Bankruptcy Court.) Upon abandonment, the property reverted from the Bankruptcy estate to the debtor. Bankr.Code, 11 U.S.C.A. § 554; *In re Moody,* 277 B.R. 858, 861 (Bankr. S.D. Ga. 2001) ( "the property is available to the debtor or creditors of the debtor to the extent that they have an interest in the property under state law"). Therefore, while plaintiffs were free to pursue their claims in the Utah Case, they chose not to do so.

## *ANALYSIS*

Defendants contend that plaintiffs' claims in this lawsuit relate to actions occurring in 1997, sixteen years ago, and the applicable statute of limitations period for theses claims has run. In particular, defendants argue that plaintiffs did not assert their claims against Barnes and Barnes Corporation until 2008, eleven years after the alleged actions took place and four years after this adversary proceeding was first filed in 2004 by Creig Brignac, who had no claims individually.

Plaintiffs argue that their lawsuit filed in Utah state court in 1999 as well as the activities in the 2004 Bankruptcy proceeding filed by Brignac interrupted prescription on all of their claims. Plaintiffs further argue that their intervention as plaintiffs in the Bankruptcy

proceeding in 2008 related back to the 2004 filing by Brignac and defendants' fraud constituted a continuing tort tolling any statute of limitations.

## *Statute Of Limitations*

It is undisputed that there are four states whose laws may be involved in this matter–Louisiana, Florida, Alabama and Utah. Plaintiffs have provided no definitive position nor any analysis of which law applies.[5] Defendants contend that a conflict of law analysis as to the applicable law for plaintiffs' fraud claim is unnecessary because, regardless of which state's statute of limitations is applied, the fraud claim has prescribed. The Court agrees that the statute of limitations has run on plaintiffs' fraud claim regardless of which of these state's law applies.

Louisiana has a general one-year liberative prescriptive period for tort claims, including fraud, which begins to run from the date of discovery. La. Civ. Code art. 3492; *Anderson v. Beauregard Memorial Hosp.*, App. 3 Cir.1998, 709 So.2d 283, 1997-1222 (La.App. 3 Cir. 3/6/98). Alabama law allows a plaintiff two years from discovery to prosecute his action for fraud. Ala. Code § 6-2-3 (2013). Florida law requires that a legal or equitable action founded on fraud be brought within four years from discovery. Fla. Stat. Ann. § 95.11(j) (2013); Fla. Stat. Ann. § 95.031 (2013). Pursuant to Utah law, fraud actions must be brought within three years from the date the fraud is discovered. Utah Code § 78B-2-305(3). On March 31, 1999, plaintiffs filed the Utah Suit confirming they had discovered

---

[5] In their Requested Special Jury Instructions submitted in response to the Court's Scheduling Order in this case, plaintiffs have provided the Court with Utah, Alabama and Florida law related to their causes of action.

the fraud claims prior to that time. *R. 206-4.* Assuming that plaintiffs filed the Utah Suit shortly after this discovery, at the latest the statute of limitations applicable to plaintiffs' fraud claim ran four years later in 2003.

The parties chose no applicable law in the Warranty Deed. Defendants assert that, pursuant to Louisiana's choice-of-law analysis, Utah law applies to the Warranty Deed as the law of the place where the property is located. *See* La. Civ. Code art. 3537. Article 2527 provides the choice of law provision for breach of contract claims and states:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of state whose policies would most seriously be impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code Ann. art. 3537.

Article 3537 requires the court to determine the relevant policies at issue, and then balance those policies to find which state's interests are most harmed in light of the facts surrounding the case. *Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 939 (5th Cir.2000). The Court agrees that Utah law applies to plaintiff's breach of warranty claim for the following reasons: (1) it is the only state with contacts to all of the parties and the transaction, (2) it

9

was the place where the Warranty Deed was prepared and the place where performance of the contract occurred, (3) it is the location of the property that was the object of the Warranty Deed, and (4) because the nature and purpose of the Warranty Deed in question was a warranty deed to convey Utah real property. *Id.*

Utah's applicable statute of limitations period for a breach of warranty claim is six years. *See* Utah Code Ann. § 78B-2-309.[6] Causes of action relating to written transfers of real estate accrue on the date the purchaser receives the deed. *Rasmussen v. Olsen*, 583 P.2d 50, 52 (Utah 1978). Plaintiffs' breach of warranty claim ran in 2003, six years after the execution of the Warranty Deed.

On May 14, 2007, the Chapter 7 Trustees for plaintiffs filed a Motion to Abandon the claims being pursued in the Utah Case. The Docket Sheet indicates there was no activity by plaintiffs listed in the case after March, 2007, and that plaintiffs' attorney withdrew on April 13, 2007. Most importantly, the Docket Sheet reflects that after the case was abandoned by the Trustees in May, 2007 which reverted it to plaintiffs. Plaintiffs, however, took no actions to either prosecute or transfer the case. Instead, they commenced this action in 2009 – over a decade after the statute of limitations began to run.

Defendants further represent, and plaintiffs do not dispute, that Utah State Courts Records Retentions Schedule, provides that the retention period for a civil case record for a case dismissed with prejudice under Utah law is 5 years. *UT Records Retention Policy App.*

---

[6] Utah Code § 78B-2-309 provides in pertinent part, "An action may be brought within six years: (1) for the mesne profits of real property; (2) upon any contract, obligation, or liability founded upon an instrument in writing…"

*F, § (B)(5)(c)(2013).* The last substantive pleading filed by plaintiffs in the Utah Case was a "Stipulation" filed on March 23, 2006. *R. 235-1, pg. 18.* Just over five years after that pleading was filed, the Docket Sheet states, "04-06-11 Note: Retention met file destroyed." *206-14, p. 18.* While the record does not reflect a dismissal of the case, the destruction of the file and return of the bond indicates the case was considered closed by the Utah Court because of plaintiffs' failure to prosecute after the Trustees' abandonment of the case.

### *Tolling*

Utah law provides no exception that would permit the tolling of the applicable statute of limitations or the interruption of the prescriptive period when a case is abandoned. The Utah Supreme Court has long held that "[c]ourts should be cautious in tolling a statute of limitations; liberal tolling could potentially cause greater hardships than it would ultimately relieve." *See Beaver Cnty. v. Prop. Tax Div of Utah State Tax Comm'n*, 128 P.3d 1187, 1194 (Utah 2006)(citing *Estes v. Tibbs*, 979 P.2d 823 (Utah 1999). The court only allows a statute of limitations to be tolled in "exceptional circumstances where the application of the general rule would be 'irrational' or 'unjust.'" *Sevy v. Security Title Co.*, 902 P.2d 629, 636 (Utah 1995).

Plaintiffs cannot meet their burden to show that the Utah Case tolled the applicable statute of limitations as the circumstances of this case– that plaintiffs failed to take any action after the case was abandoned–do not justify the tolling of the applicable statute of limitations periods pursuant to Utah Supreme Court precedent. *See Beaver Cnty*, 128 P.3d at 1194

("The doctrine of equitable tolling should not be used simply to rescue litigants who have inexcusably and unreasonably slept on their rights").

### *Relation Back*

Nor do plaintiffs' claims relate back to the 2004 adversary proceeding by the Brignac Creditors. By their own admission in their Motion to Withdraw the Reference, plaintiffs asserted that their claims in this suit did not relate to the Brignac Creditors' subordination claim and should be transferred to this Court. *R. 206, Exh. 17.* "[R]elation back will not apply to an amendment that substitutes or adds a new party for those named initially in the earlier timely pleadings …[because] such an addition amounts to the assertion of a 'new cause of action,' and if an amendment were allowed to relate back in that situation, the purpose of the statute of limitations would be defeated." *Williams v. United States*, 405 F.2d 234, 236, 239 (5th Cir. 1968); *Pappion v. Dow Chemical*, 627 F. Supp. 1576, 1581 (W.D. La. 1986)("Rule 15(c) will not allow a plaintiff to amend his or her complaint to add another prospective plaintiff, whose claim arises out of the same transaction or occurrence of the original pleading and whose claim would otherwise be time-barred, merely because the defendant had prior notice of the additional plaintiff's existence."). Rather, for claims of new plaintiffs to relate back, the plaintiff must show that his or her failure to join the new party was due only to excusable neglect. *LeMasters v. K-Mart, Inc.*, 712 F. Supp. 518, 520-21 (E.D. La. 1989)(citing 3 J. Moore, Moore's Federal Practice, ¶ 15.15[4.-1], at 15-160)). Here, plaintiffs were not included as parties in the Brignac Creditors' adversary proceedings

seeking subordination in 2004 because their claims were pending in Utah–plaintiffs' choice of forum five years earlier. Therefore, plaintiffs' claims do not relate back to the 2004 filing of the Brignac Creditors' Adversary Proceedings.

## *Conclusion*

Based on the foregoing, plaintiffs have failed to meet their burden of proof that the statutes of limitations and/or prescriptive periods have not run on plaintiffs' claims in this action. Accordingly, defendants' Motion will be granted.

*Richard T. Haik, Sr.*